IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VIZANT TECHNOLOGIES, LLC,      :            CIVIL ACTION
et al.                         :
                               :
       v.                      :
                               :
JULIE P. WHITCHURCH, et al.    :            NO. 15-431


MEMORANDUM

Bartle, J.                                        April 1, 2015

        Plaintiffs Vizant Technologies, LLC ("Vizant") and
Joseph Bizzarro ("Bizzarro") have filed this action against two
former Vizant employees, Julie P. Whitchurch ("Whitchurch") and
Jamie Davis ("Davis").  In their ten-count complaint, plaintiffs
allege two violations of the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), breach of contract, misappropriation
of trade secrets in violation of the Delaware Uniform Trade
Secrets Act ("DUTSA"), defamation, tortious interference with
existing and prospective relationships, abuse of process,
conversion, fraud, and civil conspiracy.[1]  Plaintiffs have also
moved for a preliminary injunction against defendants.

_____

1.  The claims of breach of contract, misappropriation of trade
secrets, and conversion are brought by Vizant alone against both
defendants.  The remaining seven claims are brought by both
plaintiffs against both defendants.

Before the court is the motion of defendants to dismiss the complaint pursuant to Rules 12(b)(2), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure.

I.

The following facts are pleaded in the complaint and taken in the light most favorable to the plaintiffs.  Plaintiff Vizant is a Delaware limited liability company with its principal place of business in Chadds Ford, Pennsylvania. Vizant is owned in part by Capital Solutions, Inc., which is a Pennsylvania corporation.  The Chief Executive Officer of Vizant is Joseph Bizzarro, also a plaintiff in this matter.  Both defendants reside in Georgia.

In August 2011, Vizant hired Whitchurch as a Business Development Manager.  Davis, who is the sister of Whitchurch, was hired by Vizant in May 2012.  Whitchurch was eventually promoted to National Director of Business Development, reporting directly to Bizzarro.  She was later demoted to Regional Sales and Business Development Manager.

At the time of their hiring, Whitchurch and Davis entered into signed agreements with Vizant, both of which were entitled "Confidentiality, Non-Competition and Assignment Agreement" (together, the "Vizant agreements").[2]  In relevant

_____

2.  Both agreements list Vizant by its former name: PE Systems, LLC.

-2-

part, these agreements, which appear to be identical aside from
the signatories and dates of execution, restricted the
defendants in their ability to communicate with customers and
employees of Vizant for two years following the end of their
employment with the company.  The Vizant agreements similarly
barred defendants from "engag[ing] in any diversion of
good-will" with respect to Vizant's business during that period.
The defendants were further limited in their ability to disclose
confidential information of Vizant during and after their
employment, with "confidential information" defined as follows:

> [A]ny of the proprietary or confidential
> information, technical data, trade secrets
> or know-how of the Company, in any form or
> format, including but not limited to product
> information; financial information; internal
> procedures and operations; marketing
> information and strategy; information
> regarding existing and potential customers;
> information on suppliers and sources with
> which the Company does business, including
> affiliates of suppliers and sources; the
> Company's manner of operation, strategies
> and plans; software, including all source
> and object code, whether completed or in
> development; inventions, whether or not
> patented or patentable; discoveries;
> improvements; processes; and other
> proprietary and commercial information.

In December 2013, Vizant terminated Whitchurch.  It
gave as its reasons "inappropriate conduct and insubordination,
including repeated misuse of a Vizant credit card . . . use of
foul and defamatory language against . . . Bizzarro, and . . .

attempting to interfere with the business relationship between
Vizant's CEO and Vizant's Board of Directors."  Vizant fired
Davis the next day and stated it was doing so because of her
"inappropriate conduct and insubordination, including granting
another company employee, Defendant Whitchurch, the use of a
Vizant credit card."  Each defendant received a letter from the
company reminding her of her obligations under the Vizant
agreements.

　　　　According to the complaint, immediately following
their terminations, defendants began a course of conduct which
is the basis of this action.  Whitchurch purportedly telephoned
the cell phone of Bizzarro and left a voicemail in which she
threatened to contact Vizant customers and "badmouth" the
company, to "make [her] way through the customer list and call
people and act like a 'crazy woman,'" and to "slam [Bizzarro]
and the company bad."  Around the same time, Whitchurch
contacted a Vizant employee and "state[d] disparaging
information about Vizant and . . . Bizzarro."  Whitchurch also
sent an email to Bizzarro, Vizant's counsel, and members of the
Vizant Board of Directors alleging "gross financial misconduct"
by Bizzarro and stating that Bizzarro "has no moral floor, no
moral compass, he's a liar, and he's a cheat.  There is little
doubt in my mind that he has 'enhanced' his reporting to the
board so the true financial state of the company is far more

-4-

positive than the reality."  Whitchurch later sent an email to members of Vizant's Board of Directors in which she stated that Bizzaro was "burning the people's money . . . the investor's money" and asserted "GROSS and ILLEGAL financial misconduct" by Bizzaro.  In these and subsequent communications, Whitchurch also charged that Bizzaro and Vizant had improperly withheld pay and benefits from their employees.  She further announced that she intended to "stop by" Vizant's offices and "shame" the company "into doing the right/legal thing using phone calls, emails, and in person visits."

The complaint asserts that Davis, for her part, also emailed Vizant leadership, board members, counsel, and certain outside investors in early January 2014.  In her profanity-filled message, Davis claimed that Bizzaro had "squander[ed] funds" and was a liar.  Davis also announced that she and Whitchurch had "TONS AND TONS of incriminating emails" to support their allegations.  Davis continued: "I am determined to get this story and these emails out to the general public through whatever news and social media outlet I can…I am going to blog, tweet, Facebook and Instagram this story until this matter gets some attention."

In mid-January 2014, defendants began mailing postcards to:  Vizant's office in Chadds Ford, Pennsylvania; Bizzaro's home; and the homes of members of Vizant's Board of

-5-

Directors.  The postcards described Bizzarro as "a liar" and stated that he and the company owed defendants nearly $21,000. The mailings directed recipients to visit a website established by defendants for more information.

The defendants launched the website referenced in the postcards on or about January 17, 2014.  That website included a description, apparently written by Whitchurch, of her termination from Vizant and her views regarding the company's handling of its finances.  Appended to the website was a copy of an email sent by Bizzarro to certain Vizant employees as well as statements about Bizzarro which plaintiffs consider defamatory. These statements include allegations that Bizzarro withheld pay from Vizant employees, "terminated employees that asked for their money, [and] played the 'float' (in regards to payment) with the employees' health insurance."  Defendants also posted to their website several cease and desist letters sent to them by Vizant's counsel.

On January 22, 2014, defendants warned on their website that Whitchurch was "coming to town to collect the 16K." Good to her word, Whitchurch traveled to Pennsylvania, where she attempted to enter the Philadelphia offices of Vizant's counsel despite prior warnings that she should not do so.  According to the complaint, Whitchurch also entered the property of Vizant's

corporate offices, where she placed flyers on the windshields of vehicles parked in the company parking lot.

Defendants also used social media and networking websites, including Facebook and LinkedIn, to disseminate defamatory information about plaintiffs and to contact individuals affiliated with Vizant as well as the family members of said individuals. Specifically, plaintiffs claim that defendants sent Facebook "friend requests" to certain family members of Bizzarro.

Plaintiffs further plead that defendants, after their termination, retained large amounts of material defined by their employment agreements as "confidential information" in violation of the Vizant agreements. In addition, in January 2014 Whitchurch informed Vizant officials that she had secured employment with Sib Development & Consulting, Inc., a competitor of Vizant. Plaintiffs aver that defendants may have distributed to Sib Development & Consulting, Inc. the information possessed by defendants which plaintiffs consider confidential pursuant to the Vizant agreements.

Plaintiffs initially sought to enjoin defendants from continuing their course of conduct by filing an action in the Superior Court of Cobb County, Georgia (the "Georgia action"). That court issued a temporary restraining order in January 2014 and a preliminary injunction later that year. Specifically, the

Georgia court enjoined defendants from initiating certain types of contact and communications with Vizant and with its employees, officers, and directors, and with their family members.  The Georgia court also enjoined defendants' "harassing and intimidating communications" on the internet and social media.  Finally, it restricted the ability of defendants to retain, use, and publicize plaintiffs' confidential information.

Following the issuance of the Georgia court's preliminary injunction, defendants have continued to contact Bizzarro and other Vizant officers.  On September 21, 2014, defendants emailed Bizzarro and other Vizant officers, threatening to file a RICO suit against the company.  Defendants also made a posting to their website about plaintiffs on October 2, 2014.  Plaintiffs contend that this posting contained "extensive, false and derogatory information."  Whitchurch sent an email to a Vizant director in early December 2014 in which she indicated her intention to send a "Christmas card direct mail piece" and stating that she needed "the money you owe me." Through December 2014 and into January 2015, Whitchurch continued to email Vizant directors and officers making references to corporate malfeasance.

On December 8, 2014, Vizant filed a Notice of Voluntary Dismissal without Prejudice in the Georgia action.

Pursuant to that notice, the Georgia court dismissed Vizant's action in February 2015.

In opposition to defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiffs have submitted to this court a number of supporting documents. They include several excerpts from the transcripts of proceedings in the Georgia action as the exhibits to a motion for preliminary injunction filed in this action. Those exhibits include a declaration of plaintiff Bizzarro.

Those exhibits describe the numerous steps taken by defendants to contact individuals located in Pennsylvania. Defendants sent "at least ten" postcards to the home of Bizzarro, and according to his affidavit they sent Facebook "friend requests" to some of his family members. Whitchurch, in testimony she gave during the Georgia action, stated that she had "probably sent . . . 50 e-mails" to Vizant officials as of the date of her testimony. She also conceded: "I have all of my e-mails from [Vizant]." In response to a question about whether she or Davis was responsible for "finding connections on the social media," Whitchurch stated: "[w]e're both involved." Whitchurch admitted to traveling to Pennsylvania in January 2014, and also stated that while present there she made updates to the website she and her sister maintained.

Testimony given by Bizzarro during the Georgia action has also been submitted by plaintiffs.  During those proceedings, Bizzarro testified that Whitchurch had begun "scaring [his] family ..."  In addition, Bizzarro stated that several of his nephews received "requests" from Whitchurch. Bizzarro also noted that defendants had sent mailings to the homes of certain Vizant board members, and that at least one director had resigned as a result.

According to the exhibits filed by plaintiffs, at least one potential Vizant investor declined to continue its relationship with the company after viewing the statements on the website created by defendants.  Finally, after Whitchurch and Davis were terminated from their employment with Vizant, they continued to use their company-issued computers and other devices to access files belonging to Vizant.

II.

When a defendant moves to dismiss a claim under Rule 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction exists.  See Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007).  At this stage the plaintiff must establish only "a prima facie case of personal jurisdiction" and is entitled to have its allegations taken as true and all factual disputes drawn in its favor.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).  Nonetheless, the

plaintiff must allege "specific facts" rather than vague or conclusory assertions.  Marten, 499 F.3d at 298.  Defendants have not presented to the court any affidavits or other evidence which contradicts the material submitted by plaintiffs to support personal jurisdiction.

Rule 4(k) of the Federal Rules of Civil Procedure permits a federal district court under certain circumstances to assert personal jurisdiction over a defendant who does not reside in that district.  In relevant part, the Rule provides as follows:

> (1)   Serving a summons or filing a waiver of
>       service establishes personal
>       jurisdiction over a defendant:
>
>       (A)   who is subject to the jurisdiction
>             of a court of general jurisdiction
>             in the state where the district
>             court is located [or]
>
>             . . .
>
>       (C)   when authorized by a federal
>             statute.

Fed. R. Civ. P. 4(k)(1).

In effect, Part (k)(1)(A) of Rule 4 authorizes federal district courts to assert personal jurisdiction over nonresidents of the state in which the court sits to the extent authorized by the law of that state.  Fed. R. Civ. P. 4(k)(1)(A); Marten, 499 F.3d at 296 (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir.

1987)).  Pennsylvania law, in turn, provides for jurisdiction coextensive with that allowed by the Due Process Clause of the United States Constitution.  42 Pa. Cons. Stat. Ann. § 5322(b).

Under the Due Process Clause, we may exercise personal jurisdiction only over defendants who have "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation omitted).  A parallel inquiry is whether the defendants' contacts with the forum state are such that the defendants "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

These principles of due process give rise to two recognized categories of personal jurisdiction.  The first category, general jurisdiction, "exists when a defendant has maintained systematic and continuous contacts with the forum state."  Marten, 499 F.3d at 296 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.8 (1984)).  Specific jurisdiction, in contrast, "exists when the claim arises from or relates to conduct purposely directed at the forum state."  Id. (citation omitted).  The specific jurisdiction analysis "depends on the relationship between the claims and contacts," and thus specific jurisdiction

determinations must be made on a claim-by-claim basis.  Id.
(citation omitted); see also Remick v. Manfredy, 238 F.3d 248,
255 (3d Cir. 2001).  Likewise, "each defendant's contacts with
the forum State must be assessed individually."  Calder v.
Jones, 465 U.S. 781, 790 (1984) (citation omitted).

In general, a district court analyzing its specific
jurisdiction over a particular claim must conduct a three-part
inquiry.  Marten, 499 F.3d 296 (citing O'Connor v. Sandy Lane
Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007)).  First, the
court asks whether the defendant "purposefully directed his
activities at the forum."  Id. (internal citation omitted).
Second, the court determines whether the plaintiff's claim
"arise[s] out of or relate[s] to at least one of those specific
activities."  Id. (internal citation omitted).  Third, and
finally, "courts may consider additional factors to ensure that
the assertion of jurisdiction otherwise comport[s] with fair
play and substantial justice."  Id. (internal citation omitted).
This "traditional" test of specific jurisdiction, and
specifically its "purposeful direction" prong, is closely linked
to a defendant's minimum contacts with a forum and whether these
contacts are sufficient to make the exercise of jurisdiction
consistent with due process.  See id. at 297; see also Imo
Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

In addition to this three-part test of specific jurisdiction, the Supreme Court has established a second analysis which is applicable to personal jurisdiction with respect to intentional tort claims.  In Calder, 465 U.S. 783, a defamation action, the Court endorsed a test of specific jurisdiction which places emphasis upon the effects of a defendant's actions in the forum state.  Our Court of Appeals subsequently determined that Calder permits a plaintiff to establish personal jurisdiction with respect to intentional torts as long as the following three elements are satisfied:

> (1)  The defendant committed an intentional tort;
> (2)  The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
> (3)  The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Marten, 499 F.3d at 297 (quoting Imo Indus., Inc., 155 F.3d at 265-66).

A defendant's conduct is "expressly aimed" at the forum when "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and [when the plaintiff can] point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  Imo Indus., Inc., 155 F.3d at 266.

-14-

Calder's test, in other words, is not necessarily satisfied by the "mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there."  Id.  A plaintiff seeking to satisfy Calder's analysis must "point to other actions that adequately demonstrate[] that the defendants targeted (or 'expressly aimed' their conduct at) the forum."  Id.

        The test established by Calder, commonly known as the "effects test," is distinct from the traditional three-part specific-jurisdiction inquiry for several key reasons.  First, Calder applies only to intentional torts.  See Imo Indus., Inc., 155 F.3d at 259-60.  Second, and more importantly, the Calder test need only be invoked when a district court finds that a defendant lacks sufficient minimum contacts under the traditional test.  Id.; see also Miller Yacht Sales, Inc., 384 F.3d at 108 (Scirica, J., dissenting).

        The traditional test for specific jurisdiction and Calder's "effects" test, however, are "cut from the same cloth." Marten, 499 F.3d at 297.  The two inquiries share a common touchstone:  in order for a court to exercise personal jurisdiction over a defendant, that defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."  Id. (quoting World-Wide Volkswagen, 444 U.S. at 297).

-15-

III.

As noted above, personal jurisdiction must be analyzed separately for each claim.  Remick, 238 F.3d at 255.  We turn first to Counts I and II, which plead RICO violations against both defendants.  Rule 4(k)(1)(C) authorizes personal jurisdiction over defendants "when authorized by a federal statute."  The RICO statute, in turn, contains authorizations for personal jurisdiction.  Section 1965(a) of RICO states: "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."  18 U.S.C. § 1965(a). These provisions of RICO constitute precisely the type of statutory authorization contemplated by Rule 4(k)(1)(C).

A number of appellate courts have held that the "nationwide jurisdiction" provision of § 1965 of RICO is subject to the limitations of due process.  The Second Circuit, for example, has stated that even in light of § 1965, "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant."  PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 71 (2d Cir. 1998).  The Tenth Circuit and the District of Columbia Circuit agree.  See Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1231 (10th Cir. 2006);

-16-

FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1099-1100
(D.C. Cir. 2008).   Other circuits, however, have reached the
opposite result, concluding in effect that RICO's "nationwide
service" provision abrogates the usual "minimum contacts"
requirement for personal jurisdiction over defendants with
respect to civil RICO claims.   See, e.g., ESAB Grp., Inc. v.
Centricut, Inc., 126 F.3d 617, 626-27 (4th Cir. 1997); Republic
of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 948
(5th Cir. 1998).   The Third Circuit has not had opportunity to
weigh in on this question.

　　　　We are persuaded by the reasoning of the Second
Circuit that defendants in a civil RICO action must have
sufficient "minimum contacts" with the forum state in order for
a district court in that state to exercise specific personal
jurisdiction over them.   Both Whitchurch and Davis have
sufficient "minimum contacts" with Pennsylvania for us to
exercise jurisdiction over them pursuant to § 1965 of RICO.   See
PT United Can Co., Ltd., 138 F.3d at 71.   Both, we note, are
former employees of plaintiff Vizant, located in Pennsylvania.
Before her termination Whitchurch had served as a Business
Development Manager of Vizant and at one point as its National
Director of Business Development.   Davis was also a Business
Development Manager for Vizant before her termination from the
company.   It is undisputed that after her termination Whitchurch

-17-

sent multiple emails and placed multiple telephone calls to
individuals, including Vizant's CEO, located in Pennsylvania.
Plaintiffs have come forward with evidence that Whitchurch
traveled to Pennsylvania and to Vizant's offices on at least one
occasion after her termination.  Nothing contrary is contained
in the record.  Likewise, it is undisputed that Davis, after she
was fired, sent at least one email to Bizzarro and other Vizant
officials and investors, some of whom were located in
Pennsylvania.  These emails, calls, and travel to Pennsylvania,
which serve as the basis for the RICO claims pleaded in Counts I
and II of plaintiffs' complaint, satisfy the requirement that
the defendants have sufficient "minimum contacts" with the forum
state in order to be subject to a civil RICO action here in
Pennsylvania.[3]

IV.

          We turn next to Count III of the complaint, in which
Vizant alleges breach of contract against defendants.  This

---

3.  We note also that a number of appellate courts have held
that as long as minimum contacts are established as to at least
one defendant in a RICO action, a district court may exercise
personal jurisdiction with respect to all other members of the
RICO conspiracy.  See, e.g., Cory, 468 F.3d at 1231; PT United
Can Co., Ltd., 138 F.3d at 71-72; see also Estate of Carvel ex
rel. Carvel v. Ross, 566 F. Supp. 2d 342, 350-51 (D. Del. 2008).
Thus, even if the actions of Davis, standing alone, do not
amount to the "minimum contacts" required for us to exercise
jurisdiction, we have personal jurisdiction over Davis as long
as we have personal jurisdiction over Whitchurch.

count asserts that defendants violated their employment agreements with Vizant and particularly the non-compete and confidentiality provisions of those agreements.

Because breach of contract is not an intentional tort, we assess our jurisdiction over defendants with respect to this claim under the traditional test of personal jurisdiction, without recourse to the Calder analysis.  See Imo Indus., 155 F.3d at 259-60.  A district court addressing a challenge to its personal jurisdiction over defendants in connection with a breach-of-contract claim must "consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing.  Remick, 238 F.3d at 256. Where a contract is involved, "in many instances, personal jurisdiction can arise primarily from a nonresident defendant's contract with a forum resident."  Id.  For example, personal jurisdiction may be asserted "where parties reach out beyond one state and create continuing relationships and obligations with citizens of another state" and "[w]hen a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident."  Id. at 256-57 (internal citations omitted).

Taking these factors into consideration, we conclude that we have specific personal jurisdiction over defendants as

to Vizant's breach of contract claim.  Both defendants signed
the contract at issue, that is, the Vizant agreements, upon
initiating their employment with Vizant – a company with its
principal place of business in Pennsylvania.  Whitchurch
continued to work for Vizant for nearly two and a half years,
while Davis was employed by the company for approximately one
year and seven months.  Defendants concede in their motion to
dismiss that Whitchurch "travel[ed] to Pennsylvania on the
Plaintiffs' behalf while employed with Vizant Technologies."

        The Vizant agreements set forth certain essential
terms of this employment.  By securing employment with Vizant, a
Pennsylvania-based company, by entering into these agreements,
and by maintaining certain professional responsibilities,
including travel to Pennsylvania by Whitchurch, defendants
"reach[ed] out beyond one state and create[d] continuing
relationships and obligations with citizens of another state."
See Remick, 238 F.3d at 256-57 (internal citations omitted).
The defendants' employment, governed by the Vizant agreements,
amounted to a purposeful direction of their activities into
Pennsylvania, and plaintiffs' breach-of-contract claim arises
out of those activities.  See Marten, 499 F.3d at 296.  Our
jurisdiction over this claim "comport[s] with fair play and
substantial justice."  See id. (internal citations omitted).
Most importantly, the actions of Whitchurch and Davis in

entering into the confidentiality agreement with Vizant were
such that both defendants could "reasonably [have] anticipate[d]
being haled into court" in Pennsylvania.  See id. at 297
(internal citation omitted).  We therefore find that we are
capable of exercising personal jurisdiction over both defendants
as to Vizant's breach of contract claim.

V.

        Vizant has alleged in Count IV of the complaint that
defendants engaged in misappropriation of trade secrets in
violation of DUTSA.  It is Vizant's position that the
information defined as "confidential information" by the Vizant
agreement constitutes "trade secret information" under DUTSA,
and that defendants have misappropriated or threatened to
misappropriate such information in violation of that statute.
Vizant pleads that these actions have "caused, and will continue
to cause, monetary damages including loss of business,
reputation, good will, opportunities and profits, as well as
irreparable harm to Vizant and Capital [Solutions, Inc.] and
their legitimate business interests."  Vizant further avers that
defendants' actions in this regard "were and are intentional,
willful, outrageous, and malicious."

        Under the traditional analysis, Vizant has met its
burden of showing that this court has personal jurisdiction over
both defendants as to the DUTSA claim.  To the extent that

defendants came into possession of information constituting trade secrets within the meaning of DUTSA, they did so in the course of their employment with Vizant.  Any misappropriation of this material by defendants was "purposefully directed" at Pennsylvania in that it was calculated to have a detrimental impact on a company located within that forum.  See Marten, 499 F.3d at 296 (internal citation omitted).  Vizant's DUTSA claim "arise[s] out of or relate[s] to" defendants' alleged use of Vizant's trade secrets against the company.  See id. (internal citation omitted).  We can see no reason why our exercise of personal jurisdiction over this claim would not "comport with fair play and substantial justice."  See id. (internal citation omitted).  Moreover, each defendant could "reasonably [have] anticipate[d] being haled into court" in Pennsylvania, and our exercise of personal jurisdiction over defendants with respect to Count IV comports with the requirements of due process.  See id. at 297 (internal citation omitted).

Even if we were to conclude that one or both defendants lacked sufficient minimum contacts with Pennsylvania to satisfy the traditional test of personal jurisdiction as to the DUTSA claim, such jurisdiction would nonetheless be permissible under the Calder analysis.  See Imo Indus., Inc., 155 F.3d at 259-60.  First, if either defendant committed a violation of DUTSA, then she has committed an intentional tort.

-22-

See Imo Indus., Inc., 155 F.3d at 265.  Second, according to plaintiffs' allegations, this conduct caused economic, reputational, and other harm to Vizant, a company headquartered in Pennsylvania.  It necessarily follows that Vizant "felt the brunt of the harm in [Pennsylvania] such that [Pennsylvania] can be said to be the focal point of the harm."  See id.  Third, it is clear that to the extent that defendants misappropriated the trade secrets of Vizant in violation of DUTSA, this conduct was "expressly aimed" at causing harm to an entity which defendants knew was headquartered in Pennsylvania.  See id. at 266.  In other words, both defendants "knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in" Pennsylvania.  See id.  Further, according to Vizant's allegations, defendants not only knew that their conduct would cause harm to an entity located in Pennsylvania, but also engaged in that conduct intentionally, with the goal of causing said harm.  We therefore conclude that the actions of both defendants, as detailed in Count IV, were "expressly aimed" at the Commonwealth.  See id.  For these reasons, plaintiffs have satisfied Calder's test of personal jurisdiction with respect to the DUTSA claim in addition to the traditional test.

VI.

Plaintiffs have set forth allegations of defamation in Count V of the complaint.  They plead that each defendant has

-23-

made false and defamatory statements about them; that the statements were "coordinated" by defendants with the "intent and stated purpose of embarrassing Vizant and its employees, investors and members of its Board of Directors"; and that this harm has in fact come to pass.

When a district court's personal jurisdiction over a defendant for a defamation claim is in dispute, "where defendants aimed their defamatory statements is jurisdictionally significant." Marten, 499 F.3d at 298 (citing Remick, 238 F.3d at 259). Absent allegations of "specific facts showing a deliberate targeting of Pennsylvania," we cannot exercise personal jurisdiction of this claim. See id.

Under the traditional analysis, we may exercise personal jurisdiction over both defendants with respect to plaintiffs' defamation claim. Whitchurch and Davis each engaged in conduct which was "purposefully directed" at Pennsylvania by "aim[ing] their defamatory statements" towards this forum. See Marten, 499 F.3d at 296, 298 (internal citations omitted). Whitchurch committed acts which included, but were not limited to, emailing Vizant's employees, its leadership, and its investors to make allegedly defamatory remarks about the company and Bizzarro. She also mailed postcards containing allegedly defamatory statements to a number of individuals, at least some of whom were located in Pennsylvania and traveled to the

-24-

Commonwealth to place flyers containing allegedly defamatory statements on cars in the parking lot of Vizant's headquarters.[4] Davis, for her part, engaged in conduct which included sending an email to Vizant leadership in which she made allegedly defamatory statements about Bizzarro.  These actions, calculated to reach those who might do business with Vizant and Bizzarro, evidence a "deliberate targeting of Pennsylvania."  See id. at 298.  We also note that plaintiffs' defamation claim "arise[s] out of or relate[s] to" the activities detailed above.  See id. at 296 (internal citations omitted).  As was the case with the previous counts, our exercise of personal jurisdiction over Count V as to both defendants "comport[s] with fair play and substantial justice," and defendants could have foreseen being sued in Pennsylvania.  See id.; (internal citations omitted) see also id. at 297.

Although we conclude that each defendant's contacts with this forum with respect to the defamation claim are sufficient to warrant personal jurisdiction, our exercise of jurisdiction over defendants in this regard would be proper even if this were not the case.  Under the test established by

---

4.  Nothing in the record contradicts plaintiffs' claim that Whitchurch entered the parking lot outside Vizant's offices. Whitchurch, however, has made verbal representations off the record disputing this claim.  She insists that she instead visited the Pennsylvania headquarters of Capital Solutions, Inc., which owns Vizant.

Calder, which was itself a defamation case, such jurisdiction is merited here.  384 F.3d 108; see also Marten, 499 F.3d at 297. All three elements of Calder's effects test are satisfied here as to both defendants.  First, each defendant is alleged to have committed an intentional tort.  See Imo Indus., Inc., 155 F.3d at 265.  Second, the plaintiffs, both located in Pennsylvania, felt the harm in this forum.  See id.  Third, and most importantly, both Whitchurch and Davis "expressly aimed" their conduct at Pennsylvania such that this forum "can be said to be the focal point of the tortious activity."  See id. at 266.  As detailed above, each defendant engaged in allegedly defamatory conduct which she knew would reach individuals in Pennsylvania and which she knew would cause harm in Pennsylvania.  Indeed, the conduct was specifically calculated to cause harm in the Commonwealth.  In sum, the allegedly defamatory conduct of both defendants satisfies Calder's "effects test" as well as the traditional test, and we may exercise personal jurisdiction over Whitchurch and Davis in connection with Count V.

VII.

Count VI of the complaint pleads tortious interference with existing and prospective relationships.  Plaintiffs state that Whitchurch and Davis have taken steps to persuade third parties to terminate or avoid business relationships with Vizant and that in doing so the defendants "acted purposely and with

-26-

malice and the intent to injure Vizant . . . and Bizzarro, their contractual relationships with each other and with other current and prospective contract parties."  According to plaintiffs, at least one potential investor has declined to do business with Vizant on the basis of the claims made about the company by defendants on their website.

Under the traditional test, we have personal jurisdiction over Count VI as it applies to both defendants. Whitchurch and Davis both engaged in activities allegedly designed to interfere with the business relationships of plaintiffs which were "purposefully directed" at Pennsylvania. See Marten, 499 F.3d at 296 (internal citations omitted).  These activities included the creation of a website charging financial mismanagement on the part of Vizant and Bizzarro, the mailing and distribution of flyers which made similar claims, and the sending of emails to Vizant's Board of Directors and investors alleging incompetence.  Both defendants are alleged to have engaged in this conduct.  Insofar as these activities were calculated to interfere with the business relationships of plaintiffs, they were certainly directed at Pennsylvania.  This is where Vizant's operations are located and where Bizzarro works.  Plaintiff's tortious interference claim likewise "arise[s] out of or relate[s] to" these activities, which serve as the grounds for their allegations that defendants

-27-

intentionally caused harm to their business.  See id. (internal
citations omitted).  We see no reason why our exercise of
personal jurisdiction over defendants in connection with this
claim would not "comport[] with fair play and substantial
justice."  See id. (internal citations omitted).  In sum, we
have personal jurisdiction over both defendants under the
traditional test.

      Even if we were to find defendants' contacts with this
forum lacking under the traditional analysis, personal
jurisdiction over defendants as to the tortious interference
claim would still be warranted pursuant to Calder.  Our Court of
Appeals has endorsed a limited application of Calder's "effects
test" to business torts like this one.  See Imo Indus., Inc.,
155 F.3d at 265.  The Court of Appeals has emphasized that a
plaintiff seeking to establish personal jurisdiction under
Calder in the business tort context must show not only that the
tort was "primarily felt within the forum" but also that "the
defendant *expressly aimed* its tortious conduct at the forum, and
thereby made the forum the focal point of the tortious
activity."  Id. (emphasis in original).  With respect to
plaintiff's tortious interference claim, we have personal
jurisdiction over both defendants pursuant to Calder even in
light of the restrictions articulated by the Third Circuit in
Imo Industries, Inc.  Significantly, both Whitchurch and Davis

"expressly aimed" their allegedly tortious conduct at this forum by taking steps to interfere with the prospective and existing business relationships of a Pennsylvania-based business and its Pennsylvania-based CEO.  See id. at 266.  The effects of this allegedly tortious conduct "necessarily would have been felt in Pennsylvania."  See Remick, 238 F.3d at 260.  More importantly, in light of the fact that both defendants knew of plaintiffs' location and directed their communications, postings, and other activities to individuals in the same location, we find that defendants "knew that the plaintiff[s] would suffer the brunt of the harm caused by the tortious conduct" in Pennsylvania.  See Imo Indus., Inc., 155 F.3d at 266.  These factors, combined with the fact that both defendants are alleged to have committed an intentional tort, satisfy Calder.  See id. at 265.  As a result, we have personal jurisdiction over both defendants under the Calder test in addition to the traditional analysis.

VIII.

In count VII of the complaint, plaintiffs plead abuse of process.  Among other things, they point to defendants' filings made in the Georgia action after Vizant submitted its notice of voluntary dismissal.  These filings, plaintiffs charge, were "made with the ulterior motive of furthering [defendants'] efforts to extract money from Vizant" and

"constitute the willful use of legal process that is not proper in the regular conduct of those legal proceedings."

We may exercise personal jurisdiction over defendants with respect to plaintiffs' abuse of process claim under the traditional jurisdictional test.  According to the complaint, both defendants engaged in the relevant conduct.  If, as plaintiffs plead, defendants did engage in litigation and threats of litigation with the purpose of extorting money from Vizant, a Pennsylvania-based company, then their conduct was "purposefully directed" at Pennsylvania.  See Marten, 499 F.3d at 296 (internal citations omitted).  The threats of litigation made by defendants were, according to the complaint, part of a "scheme . . . to extort money from Vizant," and as a result they can be said to have been directed at Pennsylvania in that they targeted a company located within the forum.  Similarly, the filings in the Georgia action to which plaintiffs make reference in their complaint were "purposefully directed" at Pennsylvania because, according to plaintiffs, they were "made with the ulterior motive" of furthering defendants' alleged efforts to harm a company located within this forum.  Plaintiffs' abuse of process claim also "arise[s] out of or relate[s] to" the litigation and threats of litigation which, as we have just concluded, were "purposefully directed" at this forum.  See id. (internal citations omitted).  Moreover, our exercise of

-30-

personal jurisdiction over each defendant as to plaintiffs'
abuse of process claim "comport[s] with fair play and
substantial justice."  See id. (internal citations omitted).

            As far as we can discern, the Third Circuit has not
had occasion to apply Calder to an abuse of process claim.  If
defendants' minimum contacts with Pennsylvania are insufficient
to establish jurisdiction over this claim under the traditional
test, however, then the application of Calder is nonetheless
appropriate.  See Imo Indus., Inc., 155 F.3d at 259-60.  The
conduct of both defendants, insofar as it is relevant to
plaintiffs' abuse of process claim, satisfies the three elements
established in Calder.  If in fact plaintiffs have committed
abuse of process, they have committed an intentional tort.
Plaintiffs have pleaded that they "felt the brunt of the harm"
in Pennsylvania in that Vizant, based in Pennsylvania, has
suffered reputational and financial harm as a result.  See Imo
Indus., Inc., 155 F.3d at 265.  The tortious conduct was also
"expressly aimed" at Pennsylvania, which "can be said to be the
focal point" of that activity.  See id. at 266.  Plaintiffs
allege that defendants' actions were meant to have an impact
upon Vizant, which, as defendants were aware, is headquartered
in Pennsylvania.  For this reason, it is clear that defendants
"targeted (or 'expressly aimed' their conduct at)" Pennsylvania.
See id.  Plaintiffs have therefore met their burden of

-31-

demonstrating that we have personal jurisdiction over both defendants as to the abuse of process claim.

IX.

        We now focus on the conversion claim pleaded in Count VIII of the complaint by Vizant alone.  According to Vizant, defendants intentionally retained material designated as "confidential information" under the Vizant agreements and stored this material on "their personal e-mail accounts, social media, website, computers and/or other storage media."  Vizant also avers that defendants have retained marketing materials, a cellular phone, client lists, a binding machine, and a printer, all belonging to Vizant.  These acts, according to the complaint, were intentional and caused financial, business, and reputational harm to Vizant.

        Vizant has met its burden of showing that this court has personal jurisdiction over both defendants as to the conversion claim under the traditional test.  The complaint contains allegations of conduct which was "purposefully directed" at Pennsylvania.  See Marten, 499 F.3d at 296 (internal citations omitted).  Whitchurch and Davis obtained the disputed materials and information in the course of their employment with Vizant, which is headquartered in Pennsylvania. While it is not clear from the complaint that the act of conversion took place within Pennsylvania, defendants certainly

-32-

must have been aware that the brunt of the harm would be borne in this forum.  See Marten, 499 F.3d at 296.  Indeed, it appears from the allegations contained in the complaint that defendants retained the disputed materials and information with the express goal of harming Vizant, a company headquartered in Pennsylvania. We believe that our exercise of personal jurisdiction over this claim "comport[s] with fair play and substantial justice."  See id. (internal citations omitted).  It is clear that defendants, upon retaining information and materials belonging to their Pennsylvania-based employer, "should reasonably [have] anticipate[d] being haled into court" in this forum.  See id. at 297 (internal citations omitted).

It appears that our Court of Appeals has not determined the applicability of Calder to conversion claims, but several other appellate courts have addressed this issue.  The First Circuit has questioned whether Calder was intended to apply to torts other than defamation,[5] "such as conversion or breach of contract," noting that the "'effects' test was specifically designed for use in a defamation case."  U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 624 (1st Cir. 2001).  The Ninth Circuit, on the other hand, has relied on the "effects"

---

5.  We note however, that our Court of Appeals has in fact extended Calder to torts other than defamation, although it has apparently not yet applied the analysis to a conversion claim. See, e.g., Marten, 499 F.3d at 298-99; Remick, 238 F.3d at 256-64; Imo Indus., Inc., 155 F.3d at 261-68.

test to endorse personal jurisdiction over an action which
included a conversion claim pleaded by a corporate plaintiff.
Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1110-17 (9th Cir.
2002).  That court articulated what is required to establish
Calder's "express aiming" requirement in such a situation.  It
held that where the defendants "knew that [plaintiff]'s
principal place of business was in California, knew that the
decisionmakers for [plaintiff] were located in California, and
communicated directly with those California decisionmakers,
. . . their actions were 'expressly aimed' at" California.  Id.
at 1112.  The court also held that "when a forum in which a
plaintiff corporation has its principal place of business is in
the same forum toward which defendants expressly aim their acts,
the 'effects' test permits that forum to exercise personal
jurisdiction."  Id. at 1114.  We are persuaded by the reasoning
of the Ninth Circuit under Calder.  As long as the "expressly
aimed" requirement is met and an intentional tort is alleged,
jurisdiction is proper with respect to a claim by a plaintiff
corporation in the forum where that corporation has its
principal place of business.

      In light of these considerations, we conclude that
under Calder we have specific personal jurisdiction over both
defendants in connection with the conversion claim.  In engaging
in the conduct which plaintiffs allege amounts to conversion,

-34-

both Whitchurch and Davis "expressly aimed" their actions at

Pennsylvania.  See Imo Indus., Inc., 155 F.3d at 266.  It is

clear that both defendants, as former Vizant employees, knew

where Vizant had its principal place of business, knew where its

decisionmakers were located, and communicated directly with

those decisionmakers.  See Dole Food Co., Inc., 303 F.3d at

1112.  Because Vizant, a plaintiff corporation, has its

principal place of business in Pennsylvania, the company "felt

the brunt" of the alleged conversion in that forum, making

Pennsylvania the focal point of that harm.  See Imo Indus.,

Inc., 155 F.3d at 265; see also Dole Food Co., Inc., 303 F.3d at

1114.  Thus, even if our jurisdiction is lacking pursuant to the

traditional analysis, we may exercise personal jurisdiction over

defendants with respect to plaintiffs' conversion claim based

upon Calder's "effects test."

X.

We next address Count IX of the complaint, which

alleges fraud.  Plaintiffs aver that each defendant made

fraudulent statements including statements that Vizant was

"burning" through the money of its investors, that Vizant had

improperly deprived its employees of pay and benefits to which

they were entitled, that Vizant owed defendants various amounts

of money, that the company was performing poorly and that

Bizzarro and others had concealed Vizant's financial condition

-35-

from its directors and investors, and that Bizzarro and other
Vizant officers were "engaged in illegal and gross financial
misconduct."  Plaintiffs assert that these allegedly fraudulent
statements were "made intentionally or recklessly for the
purpose of (i) harassing, defaming and threatening Plaintiffs in
order to obtain and extort money from Vizant . . . and (ii)
preventing others from associating with Plaintiffs."  Plaintiffs
maintain that they have suffered loss of goodwill and other
reputational damages, as well as other significant costs, as a
result of this conduct.

     Under the traditional test for specific personal
jurisdiction, plaintiffs' fraud claim is properly before us as
it applies to both defendants.  The allegedly fraudulent
statements were made in communications which were directed by
defendants to officers, directors, and investors of Vizant which
has its principal place of business in Pennsylvania.  Some of
those communications were emailed to Pennsylvania residents,
mailed to Pennsylvania addresses, and distributed within
Pennsylvania.  The alleged fraud of defendants was therefore
"purposefully directed" at Pennsylvania.  See Marten, 499 F.3d
296 (internal citations omitted).  Plaintiffs' fraud allegations
hinge on those communications and thus "arise out of or relate
to" activities which were purposefully directed at the
Commonwealth.  See id. (internal citations omitted).  According

-36-

to the complaint, each defendant took part in this conduct.  In light of defendants' alleged course of conduct and its connections to this forum, we can see no reason why our exercise of personal jurisdiction would not "comport[] with fair play and substantial justice."  See id. (internal citations omitted).

Were we to conclude that we lacked jurisdiction under the traditional test, we would still have personal jurisdiction under Calder.  First, plaintiffs have alleged an intentional tort.  See Imo Indus., Inc., 155 F.3d at 265.  Second, according to the complaint, Vizant and Bizzarro suffered reputational and other harm as a result of defendants' allegedly fraudulent statements such that Pennsylvania, where the two plaintiffs are located, "can be said to be the focal point of the harm."  See id. at 265.  Most importantly, defendants "expressly aimed" their allegedly fraudulent communications at this forum by sending emails and postcards to persons located in Pennsylvania and by distributing materials containing allegedly fraudulent statements within Pennsylvania.  See id. at 266.  Again, each defendant took part in this activity.  The defendants "knew that the plaintiffs[] would suffer the brunt of the harm caused by the tortious conduct" in Pennsylvania, and plaintiffs have met their burden of showing that the conduct was expressly aimed at this forum.  See id.  In sum, we have specific personal

jurisdiction over Whitchurch and Davis as to the fraud claim
under Calder as well as under the traditional test.

XI.

Finally, there are the civil conspiracy allegations in
Count X of the complaint.  It is plaintiffs' position that
defendants "combined or agreed with intent to defraud Plaintiffs
and obtain and extort money from Vizant by engaging in unlawful
means" including fraud, conversion, misappropriation of trade
secrets, tortious interference, and abuse of process.
Plaintiffs aver that defendants acted with the goal of causing
damages to Vizant and Bizzarro, and that they did in fact carry
out their conspiracy.  Plaintiffs state that they suffered
"irreparable damages" as a result of this conduct.

Insofar as plaintiffs' conspiracy claim on defendants'
alleged fraud, conversion, misappropriation of trade secrets,
tortious interference, and abuse of process, we may properly
exercise specific personal jurisdiction.  We have already
determined that we have specific jurisdiction over both
defendants with respect to plaintiffs' fraud, conversion,
misappropriation of trade secrets, tortious interference, and
abuse of process claims under both the traditional analysis and
Calder's "effects" test.  Assuming that we do have personal
jurisdiction as to defendants with respect to those five claims,
we necessarily have jurisdiction as to the conspiracy claim as

-38-

well.   The conduct which serves as the basis for those five claims is, in turn, the same conduct which serves as the basis for plaintiffs' conspiracy claim.   We therefore conclude that plaintiffs have met their burden of showing that this court has personal jurisdiction over defendants with respect to Count X of their complaint.

XII.

Defendants have also moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   They have also moved to dismiss for failure to join a party pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, but provide only superficial analysis in their brief.   Insofar as defendants' motion rests on Rule 12(b)(6) and 12(b)(7) grounds, it is without merit and will be denied.