IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


VIZANT TECHNOLOGIES, LLC,        :            CIVIL ACTION
et al.                           :
                                 :
          v.                     :
                                 :
JULIE P. WHITCHURCH, et al.      :            NO. 15-431


MEMORANDUM

Bartle, J.                                      June 2, 2015

          Plaintiffs Vizant Technologies, LLC ("Vizant") and its

chief executive officer Joseph Bizzarro ("Bizzarro") have filed

this action against Julie P. Whitchurch ("Whitchurch") and Jamie

Davis ("Davis"), sisters who are former Vizant employees.

Plaintiffs' ten-count complaint alleges:  two violations of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. §§ 1961-1968; breach of contract; misappropriation of

trade secrets in violation of the Delaware Uniform Trade Secrets

Act ("DUTSA"), Del. Code Ann. tit. 6, §§ 2001 et seq.;

defamation; tortious interference with existing and prospective

contractual relationships; abuse of process; conversion; fraud;

and civil conspiracy.[1]

---

1.  The claims of breach of contract, misappropriation of trade
secrets, and conversion are brought by Vizant alone against both
defendants.  Both plaintiffs bring the remaining counts against
both defendants.

On April 29, 2015, in response to a motion by Vizant and after a hearing, we issued a preliminary injunction against both defendants. In a memorandum accompanying that preliminary injunction, we found that Vizant was being irreparably harmed by defendants' breach of their employment agreements which they signed at the commencement of their employment with Vizant, by defendants' tortious interference with Vizant's existing and prospective contractual relationships, and by their misappropriation of Vizant's trade secrets. We found also that Vizant was likely to succeed on the merits of the claims which served as the basis for its motion, that the issuance of a preliminary injunction would not result in even greater harm to defendants, and that the public interest favored such relief.

The preliminary injunction ordered in pertinent part that:

> (3) Julie P. Whitchurch and Jamie Davis, on or before May 1, 2015, shall delete from all social media accounts controlled by either of them, and from all websites controlled by either of them, including www.nocapitalsolutions.com:
>
> . . .
>
> (b) all derogatory, unfavorable or threatening references to or statements concerning: Vizant; Capital Solutions, Inc.;[2] Joseph Bizzarro; Frank Seidman;[3] Lane

---

2. Capital Solutions, Inc. ("Capital Solutions") is an entity which owns Vizant in part. Capital Solutions is engaged by

> Wiggers;[4] and any of Vizant's present or past
> officers, directors, investors, employees,
> and clients[; and]
>
> . . .
>
> (6)  Julie P. Whitchurch and Jamie Davis, on
> or before May 4, 2015, shall file with the
> court and serve on Vizant's counsel an
> affidavit declaring that they have fully
> complied with paragraphs (1) through (3) of
> this preliminary injunction[.][5]

On May 3, 2015 and May 4, 2015, respectively,

Whitchurch and Davis filed affidavits pursuant to paragraph (6)

of the preliminary injunction.  However, those affidavits were

only partially legible.  Neither affidavit displayed the

signature of either defendant, the signature of the notary, or

the entire notary stamp.  On May 5, 2015, Whitchurch and Davis

docketed two amended affidavits which did display their

signatures as well as the signatures of the notary and complete

notary stamps.  The text of each amended affidavit included the

following statement:  "I have deleted from all social media

accounts and websites controlled by me . . . [a]ll comments that

---

investors to monitor various portfolio companies, including
Vizant.

3.  Frank Seidman is the chair of Vizant's Board of Directors.

4.  Lane Wiggers is a member of Vizant's Board of Directors.

5.  Paragraphs (1), (2), and (3)(a) of the preliminary
injunction addressed defendants' retention and use of certain
information belonging to Vizant.  Plaintiffs do not allege any
violation by defendants of paragraphs (1), (2), or (3)(a) at
this time.

may be considered derogatory, unfavorable, or threatening in reference or statements concerning:  Vizant, Capital Solutions, Inc., Joseph Bizzarro, Lane Wiggers, Frank Seidman, past or present employee [sic] and or client [sic]."

On May 5, 2015, Vizant and Bizzarro together filed a Motion for an Order to Show Cause.[6]  They claimed that defendants were in civil contempt in not having complied with the preliminary injunction.  In essence, they contended that Whitchurch and Davis had not removed certain content from their website as required by paragraph (3)(b) of the preliminary injunction.  They also took issue with the wording of defendants' affidavits of compliance as not being consistent with the wording of the preliminary injunction.  Finally, they asserted that Whitchurch had made misrepresentations at the preliminary injunction hearing concerning the scope of her relationship with SIB Development & Consulting, Inc. ("SIB"), a cost reduction firm which Vizant claims is its direct competitor.

We held a telephone conference with both defendants and counsel for plaintiffs to discuss scheduling of a hearing. During the telephone conference, the court advised the parties of the date and time when it would take place.

_____

6.  We note that only Vizant, and not Bizzarro, filed the motion which led to our issuance of the preliminary injunction.

-4-

On May 7, 2015, we granted the motion for an order to show cause. In relevant part, our order stated:

> (2)  Defendants Julie P. Whitchurch and Jamie Davis must show cause before this court, at 9:30 a.m. on May 21, 2015 in Courtroom 16A of the United States Courthouse located at 601 Market Street in Philadelphia, Pennsylvania:
>
> (a)  Why defendants should not be held in contempt for any violation of this court's Preliminary Injunction . . . ;
>
> (b)  Why defendants should not be required to pay daily fines to the court in connection with any such violation;
>
> (c)  Why defendants should not be required to compensate plaintiffs for any attorneys' fees and costs incurred in connection with this proceeding; and
>
> (d)  Why defendant Julie P. Whitchurch should not be further sanctioned for any misrepresentations made to the court concerning her work for SIB Development & Consulting, Inc.

On May 21, 2015, as scheduled, we held an evidentiary hearing on the issue of whether Whitchurch and Davis were in civil contempt for disobeying the preliminary injunction and whether sanctions should be imposed as a result of Whitchurch's misrepresentations regarding her relationship with SIB. Whitchurch was present at the hearing, but Davis was not. Whitchurch informed the court that Davis did not think that her presence at the hearing was required.

Contempt may be of two kinds, criminal or civil, or both. Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO, 545 F.2d 1336, 1342-43 (3d Cir. 1976). Criminal contempt "is a crime in the ordinary sense" and triggers the constitutional protections which accompany criminal proceedings. Int'l Union, United Mineworkers of Am. v. Bagwell, 512 U.S. 821, 826 (1994). Sentences for criminal contempt are punitive, targeted at past acts of disobedience, and designed "to vindicate the authority of the court." Id. at 828; see also Latrobe Steel Co., 545 F.2d at 1343. Civil contempt, in contrast, "is remedial, and for the benefit of the complainant." Id. (quoting Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441 (1911)). Whether a contempt sanction is criminal or civil turns not on the nature of the conduct but on the character and purpose of the sanction. Chadwick v. Janecka, 312 F.3d 597, 607-08 (3d Cir. 2002).

Civil contempt sanctions, in turn, fall into two general categories. Harris v. City of Phila., 47 F.3d 1311, 1328 (3d Cir. 1995) (citing Bagwell, 512 U.S. at 829); see also Latrobe Steel Co., 545 F.2d at 1344. One category is designed to compensate complainants "for losses sustained by [the contemnor's] disobedience." Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1994); see also Harris, 47 F.3d at 1328. The other is calculated "to coerce the defendant into compliance

with the court's order." Id. To be characterized as civil
rather than criminal, coercive contempt sanctions "must be
capable of being purged." Harris, 47 F.3d at 1328 (citing
Bagwell, 512 U.S. at 828).

The elements necessary for a finding of civil contempt
are well established. A court must find "that (1) a valid court
order existed, (2) the defendant had knowledge of the order, and
(3) the defendant disobeyed the order." John T. ex rel. Paul T.
v. Delaware Cnty. Intermediate Unit, 218 F.3d 545, 552 (3d Cir.
2003) (quoting Harris, 47 F.2d at 1326). These elements "must
be proven by clear and convincing evidence, and ambiguities must
be resolved in favor of the party charged with contempt." Id.
(internal quotation marks omitted). Courts "should hesitate to
adjudge a defendant in contempt when there is ground to doubt
the wrongfulness of the conduct." F.T.C. v. Lane Labs-USA,
Inc., 624 F.3d 575, 582 (3d Cir. 2010) (internal quotation marks
and citations omitted). However, civil contempt does not
require a finding of willfulness on the part of the contemnor,
for "good faith is not a defense to civil contempt." Id.
(internal quotation marks and citations omitted).

Before a finding of contempt is made, "due process
. . . require[s] notice and a hearing . . . so that the parties
'have an opportunity to explain the conduct deemed deficient
. . . and that a record will be available to facilitate

-7-

appellate review.'" <u>Harris</u>, 47 F.3d 1311 (quoting <u>Newton v.</u> <u>A.C. & S. Inc.</u>, 918 F.2d 1121, 1127 & n.5 (3d Cir. 1990)).  Once parties have notice that contempt proceedings have been instituted against them, however, they may waive their right to be present at the contempt hearing by "fail[ing] to avail [themselves] of the opportunity at a meaningful time and in a meaningful manner for a hearing." <u>Roe v. Operation Rescue</u>, 920 F.2d 213, 218 (3d Cir. 1990).

## II.

In light of the evidence presented at the May 21, 2015 hearing, we find the following facts, all by clear and convincing evidence.

At the contempt hearing, we first heard testimony from Jennifer Chun ("Chun").  Chun is a legal assistant at the law firm Kang, Haggerty & Fetbroyt, LLC, which represents plaintiffs.  Beginning on May 4, 2015 she regularly monitored defendants' website, www.nocapitalsolutions.com, as well as its affiliated internal links[7] in order to confirm that defendants had modified the site in compliance with the preliminary

---

7.  We use the term "internal links" to refer to subject-specific pages housed on www.nocapitalsolutions.com." For example, defendants maintained an internal link at www.nocapitalsolutions.com/bullies.html, which a viewer could locate either by navigating through www.nocapitalsolutions.com or by navigating directly to the internal link.  The website www.nocapitalsolutions.com housed approximately 38 such internal links.

injunction. Chun's consistent monitoring of the website established that the opposite was true. Although defendants made a number of changes to www.nocapitalsolutions.com starting in early May 2015, numerous derogatory and unfavorable references to Vizant, Capital Solutions, Bizzaro, and individuals affiliated with Vizant remained on the site.

Chun's most recent review of www.nocapitalsolutions.com and its internal links occurred on the morning of May 21, 2015, the same day this court held its contempt hearing. Chun's search on that date revealed that while several internal links had been deactivated, many others remained active. Every active internal link affiliated with www.nocapitalsolutions.com displayed a physical address for Capital Solutions and an email address, "joebizzarrowhereismymoney@yahoo.com." Among other things, the site as it existed on May 21, 2015 also displayed images containing the phrases "WHERE IS MY MONEY," "Breach of Fiduciary Duty," and "Hey. Just wanted you to know I was thinking of you… and the money you owe me and how much I'd like it." These phrases appeared just underneath the physical address for Capital Solutions and the email address "joebizzarrowhereismymoney@yahoo.com."

The website www.nocapitalsolutions.com as it appeared on May 21, 2015 also contained the following statement,

purportedly copied from Capital Solutions' own website:
"Investment Philosophy[:] 'CS Capital Partners (CSCP) seeks to
build long-term value through operational excellence.  We invest
in highly motivated entrepreneurs and managers and provide them
with access to exceptional resources.'"  Immediately following
that text appeared the words:  "I would have to say that I
wholeheartedly disagree with this statement.  That has not been
my experience in dealing with Frank Seidman and/or Capital
Solutions.  It has not been my experience that CS Capital
Partners concerns itself with the long-term value or managers.
It is my experience that CS Capital Partners is focused on the
exit strategy."  The website also included the text "STOP
LAWSUIT ABUSE" and definitions of the terms "litigious" and
"Ponzi scheme."  Again, these terms were juxtaposed with Capital
Solutions' address and the email address
"joebizzarrowhereismymoney@yahoo.com."

Chun also discovered and monitored an internal link
called www.nocapitalsolutions.com/monkey-continued.html (the
"'monkey-continued' internal link").  She noted that at some
point after May 4, 2015 but before the contempt hearing, the
settings on www.nocapitalsolutions.com had been modified so that
the "monkey-continued" internal link was not directly accessible
from the site.  That link, however, remained active and was
available through, for example, a Google search.  On May 21,

-10-

2015, the "monkey-continued" internal link displayed the text "'Know' Capital Solutions"; the physical address of Capital Solutions; the names of certain Capital Solutions officers, including Vizant board chair Frank Seidman; and the email address "joebizzarrowhereismymoney@yahoo.com."  Among other things, the page also contained two photographs of Joseph Bizzarro, the chief executive officer of Vizant, juxtaposed between photographs of feminine hygiene products.  An image below those photographs contained the text: "Oh…you'll be alright.  Just rub some Vagisil on it, ya big pussy!"

As of May 21, 2015 the "monkey-continued" internal link also contained the following text:

> We wrapped up court on Wed. It was a fuckin
> circus.  My head is still ringing from the
> lies.  I've never meet [sic] anyone like Joe
> Bizzarro, hope I never do again. . . .
> Seriously, I can't make this shit up.  But
> he can.  And with such great ease it's
> chilling.  And that's just what he did.
> . . . [Bizzarro is] a fucking monkey and
> quite possibly a sociopath. . . . Jesus
> Christ Frank (Frank Seidman Capital
> Solutions, Inc www.capitalsolutions.com),
> You can't find anyone more qualified,
> someone with some walking around sense, a
> few ethics, a couple morals.  Someone that's
> not a hibitual [sic] liar?  You're thinking
> "culpability" you need to be thinking
> "mitigation."  Quit thinking "Frank" and
> start thinking "investors." . . . And that
> folks is why his [Bizzarro's] face is
> sandwiched between femine [sic] products.
> Because he's a …….. wait for it…. Not a cat,
> But a _ _ _ _ _!!!

Chun described the steps she had taken during her monitoring of www.nocapitalsolutions.com to ensure that the pages she was viewing were up-to-date and reflected any changes made by the site's administrators. Specifically, Chun had consistently navigated to www.nocapitalsolutions.com and its internal links using the "Incognito" setting on the Google Chrome browser. This setting displays up-to-date versions of webpages without saving any history, thereby ensuring that the viewer sees any changes which have been made to the site. As an added precaution, Chun had opened each internal link in a separate browser window.

The court heard testimony from Pete Gilmartin ("Gilmartin"), Vizant's expert witness on information technology who is employed by the firm IT Acceleration. He stated that at Vizant's request he had monitored www.nocapitalsolutions.com and its internal links beginning on May 4, 2015 in order to determine whether pages containing the disputed content were still active. He confirmed to a reasonable degree of scientific certainty that such pages were active as recently as May 20, 2015, the date of his most recent review of the site.

Gilmartin acknowledged that websites can be "cached," meaning that a search engine or an individual user's browser saves and displays an outdated version of the site. He testified, however, that the pages he had viewed were active

rather than cached. He was confident that this was the case because he had taken precautions virtually identical to those taken by Chun.

Gilmartin also testified that Whitchurch, an administrator of www.nocapitalsolutions.com, based on what she told him, had the ability to make changes to or deletions from the website which would occur instantly. He conceded that it was possible that viewers navigating to the website via a search engine such as Google might continue to see an outdated "cached" version of the site for up to 24 hours after any changes were made, but he stated that this type of "caching" is generally only implemented with respect to extremely popular websites such as CNN.com. Defendants' website, according to Gilmartin, would almost certainly not have been cached by Google. In any event, since Gilmartin's monitoring of the site involved navigating directly to the site rather than accessing it through Google, he confirmed that the version he reviewed would have displayed any changes as soon as they were made.

In addition, Gilmartin recounted that he and his supervisor had conducted a teleconference with Whitchurch at the request of Vizant's counsel. The attorneys' goal in arranging the call had been to assist Whitchurch in removing the offending material from www.nocapitalsolutions.com, since she had expressed to plaintiffs' counsel that she was having difficulty

in doing so.  However, during the call Whitchurch stated that
she was competent in managing her website and that she knew how
to make changes to its content.  She then expressed her belief
that the disputed material did not fall within the scope of the
preliminary injunction because it was not "derogatory."  Based
on their conversation, Gilmartin concluded that Whitchurch was
proficient in maintaining her website and that she did not need
assistance in order effectively to remove material from it.  It
is Gilmartin's opinion that Whitchurch had the capacity to
delete from www.nocapitalsolutions.com any content which ran
afoul of the preliminary injunction, and that she had failed to
do so.

Whitchurch testified at the hearing that she had
received a copy of this court's preliminary injunction, that she
had read it, and that she had understood it.  That preliminary
injunction was a valid order.  Whitchurch also did not deny that
much of the material at issue remained on
www.nocapitalsolutions.com, nor did she deny being an
administrator of the website.  Instead, she testified that she
has undertaken efforts to comply with the preliminary
injunction.  The efforts she described included issuing "trouble
tickets" to Google and to the service provider which hosts the
website.  Whitchurch also stated that she had modified the
content of www.nocapitalsolutions.com in the site's

administrative portals, though it was not clear that she had saved or otherwise implemented any of the purported changes. Moreover, the modifications which Whitchurch claimed to have made left intact much of the offending content, including but not limited to the email address "joebizzarrowhereismymoney@yahoo.com."  Nonetheless, Whitchurch insisted in her testimony that she had undertaken a good-faith effort to modify the content she had posted online in order to make it consistent with the terms of the preliminary injunction. We find her testimony not to be credible.

Vizant also presented testimony that Whitchurch had misrepresented the scope of her relationship with SIB when she discussed it at the April 14, 2015 preliminary injunction hearing.  Based on this testimony, it is clear that her statements on April 14, 2015, which the court credited, did not accurately describe that relationship.  In fact, at the contempt hearing Whitchurch acknowledged that she had been in communication with SIB as early as September or October 2013, several months before her termination from Vizant.  Whitchurch had initiated contact with SIB and had requested to meet with representatives of the company at its offices in Charleston, South Carolina.  Whitchurch was able to schedule this meeting in part because she was traveling to the area on business for Vizant.  She testified at the contempt hearing that her goal in

scheduling the meeting was to propose a partnership between SIB
and Vizant.  However, Vizant later obtained emails exchanged
between Whitchurch and representatives of SIB in which
Whitchurch repeatedly expressed her interest in working for the
company.  In November 2013, Whitchurch also submitted to SIB a
proposal under which she would take on a supervisory role at SIB
and persuade several Vizant employees to join her there.
Whitchurch continued communicating with SIB until at least April
2014.  The extent of these communications was not disclosed by
Whitchurch at her deposition or at the preliminary injunction
hearing.  Instead, she maintained then that she never had a
business relationship with or pursued employment with SIB.

Based on these facts, which we have found by clear and
convincing evidence, we make the following conclusions of law.

III.

We first address the absence of defendant Davis at the
contempt hearing.  As discussed above, a party who is absent
from her contempt hearing may still be held in contempt as long
as she has adequate notice of the proceedings and waives her
right to be present by "fail[ing] to avail [herself] of the
opportunity" to be present.  See Roe, 920 F.2d at 218.

Our order of May 7, 2015 stated in relevant part:
"Defendants Julie P. Whitchurch and Jamie Davis must show cause
before this court, at 9:30 a.m. on May 21, 2015 in Courtroom 16A

-16-

of the United States Courthouse located at 601 Market Street in Philadelphia, Pennsylvania." (Emphasis added.) Davis, as a pro se party in this action, was mailed a copy of that order.

In addition, Whitchurch testified on May 21 that she had discussed the hearing with Davis and that Davis was aware that the hearing was taking place. According to Whitchurch, Davis had stated that she did not think her presence was required and that she did not plan to attend. On May 7, 2015 Davis also took part in the telephone conference with the court to address plaintiffs' motion for an order to show cause and to schedule a hearing. During that conference, defendants were informed that they would need to travel to Philadelphia for a contempt hearing if the motion were granted. The court postponed its suggested date for the hearing for one week for the convenience of defendants. At no time did the court state or imply that only Whitchurch, and not Davis, would need to attend.

Davis therefore had adequate notice of the contempt hearing as required by due process. She waived her right to be present by "fail[ing] to avail [herself] of the opportunity" to attend. See Roe, 920 F.2d at 218. Because Davis was afforded sufficient notice of the hearing and chose not to attend, any ruling applicable to her does not offend due process.

IV.

We must now determine whether defendants are in
contempt for failing to comply with the preliminary injunction.
As discussed above, in order to hold defendants in contempt we
must find by clear and convincing evidence "that (1) a valid
court order existed, (2) the defendant[s] had knowledge of the
order, and (3) the defendant[s] disobeyed the order." John T.
ex rel. Paul T., 218 F.3d at 552 (quoting Harris, 47 F.2d at
1326). We must resolve all ambiguities in favor of defendants,
but need not consider whether their conduct was willful. Id.;
F.T.C., 624 F.3d at 582.

There is clear and convincing evidence, which
defendants do not dispute, that a valid court order existed and
that they had knowledge of the order. See John T. ex rel. Paul
T., 218 F.3d at 552. Therefore, we turn to the question whether
defendants disobeyed the preliminary injunction. See id.

As discussed above, the preliminary injunction ordered
in relevant part:

> (3) Julie P. Whitchurch and Jamie Davis, on
> or before May 1, 2015, shall delete from all
> social media accounts controlled by either
> of them, and from all websites controlled by
> either of them, including
> www.nocapitalsolutions.com:
>
> . . .
>
> (b) all derogatory, unfavorable or
> threatening references to or statements

-18-

concerning:  Vizant; Capital Solutions,
Inc.; Joseph Bizzarro; Frank Seidman; Lane
Wiggers; and any of Vizant's present or past
officers, directors, investors, employees,
and clients.

We find by clear and convincing evidence that both
defendants disobeyed this portion of the court's preliminary
injunction.  Defendants are administrators of
www.nocapitalsolutions.com and therefore it is a "website[]
controlled by either of them" within the meaning of the
preliminary injunction.  By May 1, 2015, defendants had not
deleted from www.nocapitalsolutions.com and its affiliated
internal links the material described in paragraph (3)(b) of the
preliminary injunction.  Instead, as recently as May 21, 2015,
there remained on the website material which constituted
"derogatory, unfavorable or threatening references to or
statements concerning" the individuals and entities listed in
that paragraph.

Specifically, as of May 21, 2015 the website
www.nocapitalsolutions.com contained "derogatory, unfavorable or
threatening" content which included but was not limited to the
following:

(1)  The email address
"joebizzarrowhereismymoney@yahoo.com" on every active page;

(2)  The phrases "WHERE IS MY MONEY," "Breach of
Fiduciary Duty," and "Hey.  Just wanted you to know I was

thinking of you… and the money you owe me and how much I'd like it" situated just underneath a physical address for Capital Solutions and the email address "joebizzarrowhereismymoney@yahoo.com";

(3)   The statement from Capital Solutions' website: "Investment Philosophy[:] 'CS Capital Partners (CSCP) seeks to build long-term value through operational excellence.  We invest in highly motivated entrepreneurs and managers and provide them with access to exceptional resources" followed by the statement "I would have to say that I wholeheartedly disagree with this statement.  That has not been my experience in dealing with Frank Seidman and/or Capital Solutions.  It has not been my experience that CS Capital Partners concerns itself with the long-term value or managers.  It is my experience that CS Capital Partners is focused on the exit strategy";

(4)   The phrase "STOP LAWSUIT ABUSE" and definitions of the terms "litigious" and "Ponzi scheme," all juxtaposed with Capital Solutions' address and the email address "joebizzarrowhereismymoney@yahoo.com";

(5)   Photographs of Joseph Bizzarro juxtaposed between photographs of feminine hygiene products and accompanied by the text:  "Oh…you'll be alright.  Just rub some Vagisil on it, ya big pussy!"; and

(6)  The following text:

> We wrapped up court on Wed. It was a fuckin
> circus.  My head is still ringing from the
> lies.  I've never meet [sic] anyone like Joe
> Bizzarro, hope I never do again. . . .
> Seriously, I can't make this shit up.  But
> he can.  And with such great ease it's
> chilling.  And that's just what he did.
> . . . [Bizzarro is] a fucking monkey and
> quite possibly a sociopath. . . . Jesus
> Christ Frank (Frank Seidman Capital
> Solutions, Inc www.capitalsolutions.com),
> You can't find anyone more qualified,
> someone with some walking around sense, a
> few ethics, a couple morals.  Someone that's
> not a hibitual [sic] liar?  You're thinking
> "culpability" you need to be thinking
> "mitigation."  Quit thinking "Frank" and
> start thinking "investors." . . . And that
> folks is why his [Bizzarro's] face is
> sandwiched between femine [sic] products.
> Because he's a …….. wait for it…. Not a cat,
> But a _ _ _ _ _!!!

This list, while representative of the content still on defendants' website which is "derogatory, unfavorable or threatening" to the entities and individuals listed in paragraph (3)(b) of the preliminary injunction, is not exhaustive.  All of the content just described constitutes "derogatory, unfavorable or threatening references to or statements concerning:  Vizant; Capital Solutions, Inc.; Joseph Bizzarro; Frank Seidman; Lane Wiggers; and any of Vizant's present or past officers, directors, investors, employees, and clients" within the meaning of the preliminary injunction.  The email address "joebizzarrowhereismymoney@yahoo.com" in and of itself

constitutes such a reference, as do the remaining statements listed above.  The meaning of the terms "derogatory," "unfavorable," and "threatening" is clear.  There is no ambiguity as to what falls into those categories.  Moreover, we have found that Whitchurch is proficient in the administration of the website and can delete this content without difficulty. By failing to delete the content detailed above, and similar content, from their website, defendants have disobeyed a valid court order of which they had knowledge.[8]  See John T. ex rel. Paul T., 218 F.3d at 552.  Accordingly, we find defendants to be in civil contempt of the preliminary injunction.

We note that the presence on www.nocapitalsolutions.com of the content described above also supports plaintiffs' claims for breach of contract and tortious interference with existing and prospective relationships.  It follows that the preliminary injunction, which was based in part on those claims, encompasses material such as that listed here. The web content identified by plaintiffs at the contempt hearing properly falls within the scope of our preliminary injunction,

---

8.  When they moved for an order to show cause, plaintiffs brought to the court's attention that Whitchurch had failed to remove certain publicly-available videos from her YouTube account in violation of the preliminary injunction.  By the time the contempt hearing was convened, however, Whitchurch had removed the videos.  Accordingly, we will not hold either defendant in civil contempt on that basis.

and by failing to remove it from their website, defendants clearly disobeyed that order.

Whitchurch urges that she did in fact delete the offending content as required by paragraph (3)(b) of the preliminary injunction. She maintains that any lingering references are attributable to server errors. There is clear and convincing evidence that no such errors occurred. The court heard credible testimony from Chun and Gilmartin that derogatory, unfavorable, or threatening references as described in paragraph (3)(b) of the preliminary injunction appeared on www.nocapitalsolutions.com consistently between May 4, 2015 and May 21, 2015. The methods used by Chun and Gilmartin in monitoring the site's content ensured that any server errors of the type described by defendants would not color their findings.

Whitchurch also maintains that she made every effort to comply with the court's order and that she did not intend to disobey it. She points to the steps she took to delete content from the website, and insists that she was repeatedly stymied by confusing instructions and a lack of access to her website. We are not persuaded. Her testimony is contradicted by the credible testimony of Gilmartin, who recalled that Whitchurch, despite being competent to manage the content on her website, told him that she would not do so because she did not believe the references at issue were "derogatory" within the meaning of

our order.  Gilmartin also recounted that Whitchurch had

rebuffed his offer to help her remove the material.  Whitchurch

had ample opportunity to bring the website into compliance with

the preliminary injunction and declined to do so.

Whitchurch's argument is also inconsistent with her

own testimony that she attempted to leave active only a pared-

down version of her website which omitted much of the material

at issue.  Even this pared-down version of the site, as

presented by Whitchurch, contained the derogatory reference

"joebizzarrowhereismymoney@yahoo.com" on every page as well as

other material encompassed by the preliminary injunction.  Even

if they had been implemented, the modifications Whitchurch

claims to have made would not have brought the website into

compliance with the preliminary injunction.

We also note that both defendants declared in their

amended affidavits:  "I have deleted from all social media

accounts and websites controlled by me . . . [a]ll comments that

may be considered derogatory, unfavorable, or threatening in

reference or statements concerning:  Vizant, Capital Solutions,

Inc., Joseph Bizzarro, Lane Wiggers, Frank Seidman, past or

present employee [sic] and or client [sic]."  These affidavits

are incomplete in that paragraph (3)(b) of the preliminary

injunction also demands that defendants remove offending

comments related to "any of Vizant's present or past officers,

-24-

directors, [or] investors."  Further, the evidence presented at the contempt hearing demonstrates that defendants' affidavits are false.  As of May 21, 2015, defendants' website clearly contained "comments that may be considered derogatory, unfavorable, or threatening in reference or statements concerning:  Vizant, Capital Solutions, Inc., Joseph Bizzarro, Lane Wiggers, Frank Seidman, past or present employee [sic] and or client [sic]."

Moreover, even if Whitchurch and Davis had undertaken in good faith to comply with the preliminary injunction, their efforts would not change our analysis.  As noted above, "good faith is not a defense to civil contempt."  See F.T.C., 624 F.3d at 582.

Finally, Davis has failed to appear and is in default. The findings concerning Whitchurch are also findings against Davis.

V.

Having determined that plaintiffs have proven by clear and convincing evidence that defendants are in civil contempt for failure to comply with paragraph (3)(b) of our preliminary injunction of April 29, 2015, we must now determine what sanctions are appropriate.  As discussed above, civil contempt sanctions may be compensatory or coercive.  Robin Woods Inc., 28 F.3d at 400.  The former compensate complainants for any losses

sustained by the actions of the contemnor, while the latter, "coerce the [contemnor] into compliance with the court's order." Id.

Both compensatory and coercive civil contempt sanctions are appropriate in this context. Compensatory sanctions are merited because Vizant has shown, by clear and convincing evidence, that it incurred $29,200 in legal fees in connection with defendants' contempt for failure to comply with the preliminary injunction. Those fees were incurred in the course of the work conducted by the law firm which represents Vizant to prepare Vizant's motion for an order to show cause, write a supporting legal brief, prepare for the contempt hearing, and attend the contempt hearing. The fees consist of: $8,000 in fees for the work of attorney Gregory Matthews, $13,500 in fees for the work of attorney Edward Kang, $2,200 in fees for the work of legal assistant Jennifer Chun, $5,000 in costs in connection with securing the services of IT Acceleration, and $500 in costs for the production of binders. These sums are fair and reasonable. By ordering defendants to pay the sum of $29,200 to Vizant, we ensure that Vizant is compensated for losses sustained by defendants' disobedience. See Robin Woods Inc., 28 F.3d at 400.

Coercive sanctions are also appropriate inasmuch as defendants are still not in compliance with the court's

preliminary injunction entered on April 29, 2015.  See Bagwell,
512 U.S. at 828-29.  The court will order defendants Julie P.
Whitchurch and Jamie Davis each to pay into the court the sum of
$300 per day, beginning on June 3, 2015.  These payments must
continue to be made by each defendant for each day or part of a
day until that defendant files an affidavit with the court that
she is in full compliance with paragraph (3)(b) of the court's
April 29, 2015 preliminary injunction.  Said affidavit shall
state the date when full compliance took place.

VI.

Plaintiffs also urge us to sanction Whitchurch for her
misrepresentations concerning her relationship with SIB.

At the contempt hearing, we heard credible testimony
that the scope of the relationship between Whitchurch and SIB
went far beyond what was described by Whitchurch at the
preliminary injunction hearing.  While we find Whitchurch's
testimony at the earlier hearing problematic, that testimony was
not material to the preliminary injunction and would not have
changed the scope of that order.  Plaintiffs have presented no
evidence that Whitchurch is now in communication with SIB, that
she has taken steps to re-initiate communication with SIB, or
that she intends to do so.

We decline to impose sanctions against Whitchurch in
connection with the SIB matter and also decline to award to

-27-

Vizant the attorneys' fees it incurred in exposing Whitchurch's

misrepresentation about SIB.